IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS RAY NORRIS, )<br>a/k/a CHUCK NORRIS, an individual, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PENGUIN GROUP (USA), INC., )<br>a Delaware corporation, )<br>IAN SPECTOR, an individual. and )<br>QUBEFACTOR, INC., a New York )<br>Corporation, d/b/a QUBEFACTOR )<br>TECHNOLOGIES, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 07 CV 11480 (RWS) |

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Anthony J. Laura (AL-3091)
PATTON BOGGS LLP
1185 Avenue of the Americas, 30th Floor
New York, New York 10036
(646) 557-5100

Deborah M. Lodge (DL-8774)
PATTON BOGGS LLP
2550 M Street NW
Washington, D.C. 20037
(202) 457-6000

Attorneys for Plaintiff

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………....iii

I. INTRODUTION………………………………………………………........1

II. ARGUMENT AND CITATION OF AUHORITY……………………………........3

    A. Defendants Assert the Wrong Standard of Review………………….........3

    B. Under the Correct Standard Plaintiff Is Likely To Succeed On The Merits……….3

        1. The First Amendment Does Not Insulate Defendants' Conduct………………………………………………………….........3

        2. Defendants' Attempt at Parody Is Confusing To the Consumer Public Because Plaintiff Has Endorsed, Owns the Mark to, and Profits From Certain Of the "Facts"……………………………………………….......4

        3. Defendants' Bad Faith Increases the Likelihood of Confusion, Eliminates any "Fair Use" Defense, and Adds to Mr. Norris's Common Law Unfair Competition Claims………………………….......6

        4. Mr. Norris is Likely To Succeed on His Trademark Claims……………..8

        5. Mr. Norris Is Likely to Succeed on His Right of Publicity Claim………...8

    C. Defendants' Defenses of Laches, Estoppel and Acquiescence Fail Because Defendants Did Not Assure Defendants That He Would Not Assert His Trademarks……………………………………………………………..9

III. CONCLUSION…………………………………………………………...10

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                            **PAGE**

*Anheuser-Busch, Inc. v. Balducci Pubs.* 28 F.3d 769 (8th Cir. 1994)..........................7n

*Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962 (C.D. Cal. 2007)..........................4n

*Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*, 433 F.2d 686 (2d Cir. 1970)..........................9-10

*Cliff Notes, Inc. v. Bantam Doubleday Dell Publishing Group*, 886 F.2d 490 (2d Cir. 1989)..........................4

*Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39 (2d Cir. 1994)..........................6n

*EMI Catalogue Pshp. v. Hill, Holliday, Connors, Cosmopulos Inc.*, 2000 U.S. App. LEXIS 30761, *20 (2d Cir. 2000)..........................7n

*Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144 (2d Cir. 1999)..........................3

*Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432 (S.D.N.Y. 1989)..........................6n-7n

*Hormel Foods Corporation v. Jim Henson Productions*, 73 F.3d 497 (2d Cir. 1996)..........................4-5

*Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994)..........................9

*New York Stock Exch., Inc. v. Gahary*, 196 F. Supp. 2d 401 (S.D.N.Y. 2002)..........................5

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003)..........................8

*Pinehurst, Inc. v. Wick*, 256 F. Supp. 2d 424 (M.D.N.C. 2003)..........................6

*Planned Parenthood Federation of America, Inc. v. Bucci*, 97 Civ. 0629 (KMW), 1997 U.S. Dist. LEXIS 3338 (S.D.N.Y. March 24, 1997)..........................6

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313, 7 (S.D. N.Y. 1997), *aff'd mem.*, 152 F.3d 920 (2d Cir. 1998)..........................8n

*Playboy Enters. v. Welles*, 279 F.3d 796 (9th Cir. 2002)..........................7

*Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62 (2d Cir. 2002)..........................10

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)..........................4

*Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621 (2d Cir. 1983)..........................8n

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992)..........6n

*Schieffelin & Co. v. Jack Co.*, 725 F. Supp. 1314 (S.D.N.Y. 1989)..........5n

*Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir.), *cert. denied*, 492 U.S. 907, 109 S. Ct. 3219, 106 L. Ed. 2d 569 (1989)..........4

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765 (2d Cir. 2007)..........8n

*Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995)..........3

*Twin Peaks Productions, Inc. v. Publications Int'l Ltd*, 996 F.2d 1366 (2d Cir. 1993)..........6

*Virtual Works, Inc. v Volkswagen of Am., Inc.* 238 F3d 264, 57 USPQ2d 1547 (4th Cir. 2001)..........7n

*World Wrestling Federation Entertainment, Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 413 (W.D. Pa. 2003)..........5

**STATUTES**                                                                                          **PAGE**

Trademark Law

15 U.S.C. § 1125(d)(1)(B)(ii)..........7n

Plaintiff Carlos Ray Norris, a/k/a Chuck Norris, submits this Reply to Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction.

## I.    INTRODUCTION

The crux of this Motion is to protect the public from confusion, mistake, and deception caused by Defendants' bad faith profiteering from the unauthorized use of Mr. Norris's name and celebrity status and association with certain fabricated "facts" about Mr. Norris. "But for" the use of Mr. Norris's name and images, there would be no market for Defendants' Book.

Defendants' Book, "The Truth About Chuck Norris," contains anything but "the truth." The Book instead gratuitously associates Mr. Norris with cruel, adulterous and other tarnishing acts. Defendants indignantly defend their conduct by wrapping the Book in the mantle of the First Amendment, claiming the Book is a protected work of "artistic expression." The First Amendment and "parody" cases cited by Defendants do not apply here because, unlike in those cases, Defendants did not create the alleged "artistic expression"—Defendants' "facts" were freely available on various public Internet websites prior to the publication of the Book. Defendants' Book merely re-publishes for profit "facts" created by other authors and submitted via the Internet to Defendant Spector for non-commercial use.

Further, none of Defendants' cases apply First Amendment principles to a purported "parody" that competes with and usurped the plaintiff's own authorized material. Defendants' Book directly competes with authorized usages and encroaches on Mr. Norris's ability to license his name for use in other "facts"-related commercial contexts, or to control the use of his trademarks for commercial endeavors. For example, the Book interferes with Mr. Norris's ability to market his own "facts" book. The law recognizes Mr. Norris's right to control the commercial uses of his name and image. Defendants have misappropriated that right. The co-existence of the Book, with its unauthorized uses of Mr. Norris's name and image, with authorized "facts" and uses of Mr. Norris's name and image leads to the likelihood of confusion, the tarnishment, and the encroachment on Mr. Norris's

commercial interests that the law protects. Plaintiff's moving papers include multiple examples of actual confusion that have already occurred.

This alone creates sufficient grounds for injunctive relief. Apart from that unlawful usurpation, however, Defendants misled the consuming public into believing that Mr. Norris endorsed the Book. In fact, Mr. Norris had not endorsed the Book and had not been asked to endorse the Book. Indeed, Defendants were fully aware that Mr. Norris would not endorse the Book. Defendants have now replaced statements about Mr. Norris's endorsement of the Book with an ambiguous text reference to being "roundhouse kicked" with this lawsuit.

Despite prior knowledge of Plaintiff's opposition to Defendants' unauthorized use of Plaintiff's name for commercial gain, Defendants assert a laches defense, stating that Plaintiff did not inform them of his concerns quickly enough. As early as March 2006, however, Mr. Norris's attorney informed Defendant Spector that Mr. Norris's consent would be needed before any "Chuck Norris" products could be sold on Mr. Spector's non-commercial "facts" website. The latest edition of the Book removes the explicit endorsement statements, which, is tantamount to an admission of Defendants' wrongful conduct, but does not cure the harm caused by the more than 60,000 books that still remain in circulation with that false endorsement. Moreover, the Book continues the unauthorized exploitation of Plaintiff's name and image.

Defendants also complain that Mr. Norris should have objected to the misleading endorsements prior to the Book's publication. That is ludicrous. Defendants denied Mr. Norris's request for an advance copy of the Book, making it impossible for Mr. Norris to know about the misleading statements contained in the Book until after publication. Mr. Norris filed the Complaint and a motion for temporary relief as soon as practicable after the Book's release, and in an effort to minimize pre-holiday publicity for and distribution of the Book.

Tellingly, Defendants do not claim that they would have acted differently had Mr. Norris protested sooner. Indeed, even after receiving two pre-publication cease-and-desist letters from

Plaintiff's lawyers, both of which communicated Plaintiff's intent to seek an injunction, Defendants released <u>three subsequent printings</u> of the Book, thus intentionally releasing nearly 60,000 copies of the Book with these false statements. Defendants were on notice of Plaintiff's objections prior to the publication of the Book and assumed the risk of an injunction by persisting in illegal conduct.

## II.  ARGUMENT AND CITATION OF AUTHORITY

### A.  Defendants Assert the Wrong Standard of Review

Defendants incorrectly advocate for a "more rigorous" standard of review, arguing that the injunction allegedly will "alter, rather than maintain, the status quo." Dkt. #20 (Opp. Brief), at 6. Defendants' citation to *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 150 (2d Cir. 1999), is misleading. The language Defendants cite to support their "heightened standard" argument actually comes from *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995). In that case, the Second Circuit limited the "heightened standard" rule to situations in which the effects of a preliminary injunction could never be undone. As the court noted in *Tom Doherty*:

> **If the use of a heightened standard is to be justified**, the term "all the relief to which a plaintiff may be entitled" must be supplemented by a further requirement that the **effect of the order, once complied with, cannot be undone.** . . . The bottom line is that, **if a preliminary injunction will make it difficult or impossible to render a meaningful remedy to a defendant who prevails on the merits at trial, then the plaintiff should have to meet the higher standard** of substantial, or clear showing of, likelihood of success to obtain preliminary relief.

*See id.* at 35 (emphasis added).

Defendants' suggestion that the "heightened standard" applies because the Book would have to be destroyed if a preliminary injunction issued is melodrama. *See* Dkt. #20 (Opp. Brief), at 25. Indeed, in the unlikely event that Defendants prevail at trial, Defendants can resume selling the Book, and can reinstate the domain names, website postings and Internet advertising.

### B.  Under the Correct Standard, Plaintiff Is Likely To Succeed On The Merits

#### 1. The First Amendment Does Not Insulate Defendants' Conduct.

Defendants claim that the First Amendment confers blanket immunity on all "books and other forms of expressive speech." Dkt. #20 (Opp. Brief), at 7. Once again, the case law that Defendants rely on actually explains why relief should be granted here. In *Cliff Notes, Inc. v. Bantam Doubleday Dell Publishing Group*, 886 F.2d 490, 494 (2d Cir. 1989) (emphasis added), the Second Circuit held that:

> "**[T]rademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression**." *Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir.), *cert. denied*, 492 U.S. 907, 109 S. Ct. 3219, 106 L. Ed. 2d 569 (1989). Books are "sold in the commercial marketplace like other more utilitarian products, making **the danger of consumer deception a legitimate concern that warrants some government regulation**." *Rogers v. Grimaldi*, 875 F.2d 994, 997 (2d Cir. 1989).

The First Amendment does not protect <u>false or misleading speech</u>, whether classified as "expressive" or "commercial." The Second Circuit has emphasized "the strong public interest in avoiding consumer confusion over [the book at issue]. As we put it in *Rogers*, the purchaser of a book, 'like the purchaser of a can of peas, has a right not to be misled as to the source of the product.'" *Id.* at 495 (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 997-98 (2d Cir. 1989)). Even if Defendants' Book and commercial advertising are considered "expressive" speech, the public interest in avoiding confusion outweighs any public interest in publishing the Book. *See id.* In view of the confusion spawned by the Book and Defendants' unjustified usurpation of Mr. Norris's name and image, the First Amendment does not shield Defendants' infringing conduct.

    2.    Defendants May Not Rely On A Parody Defense Due To the Likelihood of Confusion

Defendants "cry parody!"[1] in another attempt to wrap the Book in the mantle of the First Amendment. *See* Dkt. #20 (Opp. Brief), at 7. Parody is not a separate defense, however, but is merely another factor in the traditional *Polaroid* likelihood of confusion analysis.[2] *See Hormel Foods*

---

[1] *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 972 (C.D. Cal. 2007) ("But the cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution.").

[2] Defendants rely on Judge Cote's denial of Mr. Norris's application for a TRO at the outset of the case. However, Judge Cote based her decision on two factors: i) Defendants' "prior restraint" argument, and ii) her conclusion that "parody" was a complete defense to Mr. Norris's claims. *See* Dkt # 21, Ex. 1, at 17-19. Defendants have since abandoned their prior restraint

*Corporation v. Jim Henson Productions*, 73 F.3d 497, 502, 503 (2d Cir. 1996) ("[A] parody depends on a lack of confusion to make its point"); *see also World Wrestling Federation Entertainment, Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 413 (W.D. Pa. 2003) ("[P]arody is not defense to trademark infringement, but rather another factor to be considered, which weighs against a finding of a likelihood of confusion" that can weigh "heavily enough to overcome a majority of the digits of confusion weighing in favor of a likelihood of confusion."). The "key question" in evaluating parodies "is whether the speaker has created confusion by identifying the famous party as the actual source of the message, as opposed to simply the target of the parody." *New York Stock Exch., Inc. v. Gahary,* 196 F. Supp. 2d 401, 430 (S.D.N.Y. 2002).

Such confusion is likely—and, indeed, already evident—in this case, especially given Mr. Norris's own "facts"-related writings, public statements and merchandise. Mr. Norris owns registered trademarks for "Chuck Norris" and "Chuck Norris Facts." *See* Dkt. #8 (Norris Decl.), at ¶ 7 and Ex. 2. Mr. Norris's authorized "Chuck Norris Facts" website, chucknorrisfacts.com, links to sources for licensed merchandise using the "Chuck Norris" name and "Chuck Norris Facts." Mr. Norris has publicly endorsed some of the "facts" that meet his values, including a personal spoof of the "facts" phenomenon in a Mountain Dew commercial, a promotion for former presidential candidate Mike Huckabee, and endorsements on television and radio shows.[3] In each instance, Mr. Norris carefully scrutinized the "facts" and endorsement to ensure that they comported with his values and beliefs. *See* Dkt. #8 (Norris Decl.), at ¶¶ 7, 11-12.

Defendants miss the point by asserting that there is "little likelihood that readers would confuse Spector's humorous book" with Mr. Norris's inspirational or martial arts-related texts, *see* Dkt. #20 (Opp. Brief), at 14. The point is that public confusion is likely because Plaintiff has distributed his

---

argument and, as the case law dictates, "parody" is not a complete defense. *See Schieffelin & Co. v. Jack Co.,* 725 F. Supp. 1314, 1323 (S.D.N.Y. 1989) (citing McCarthy, *Trademarks and Unfair Competition* (2d ed. 1984) § 31:38, at 667). Judge Cote recognized the spontaneity of her ruling, immediately offering Mr. Norris the opportunity to move for a preliminary injunction.

[3] Incredibly, Defendants assert both (i) that confusion is unlikely because it is unlikely that Mr. Norris would endorse these facts, and (i) that Mr. Norris "acquiesced" to their use due to his public endorsement of these facts. *Compare* Dkt. # 20 (Opp. Brief), at 8, 10 (relying on *Twin Peaks* to argue that Mr. Norris would not license his image for use with a parody), *with* Dkt. # 20 (Opp. Brief), at 1, 23, 30 (pointing out Mr. Norris's prominent endorsement of the "facts").

own "facts"-related writings, public statements and merchandise. As Plaintiff's evidence shows, Mr. Norris's fans already connect Mr. Norris with the Book, and assert, as does Mr. Norris, that Defendants trampled on Mr. Norris's rights by publishing the Book without his approval. *See* Dkt. #9 (Pla. Brief), at 13. Such confusion was stoked by deliberate misrepresentations in more than 60,000 copies of the Book already distributed that Mr. Norris "played along" and approved of the Book.

Nor can Defendants claim a parody defense to cybersquatting. The domain name "truthaboutchucknorris.com" does not "simultaneously" convey the message that the Website does not contain truthful information about "Chuck Norris." *See Planned Parenthood Federation of America, Inc. v. Bucci*, 97 Civ. 0629 (KMW), 1997 U.S. Dist. LEXIS 3338 (S.D.N.Y. March 24, 1997) (rejecting parody defense where domain name is plainly misleading). The domain name links to a commercial advertisement for the Book, not to 4q.cc "facts" content, and so is a commercial use, which constitutes dilution and cybersquatting. *See Pinehurst, Inc. v. Wick*, 256 F. Supp. 2d 424 (M.D. N.C. 2003).

    3.    <u>Defendants' Bad Faith Increases the Likelihood of Confusion, Bars Any "Fair Use" Defense, and Adds to Mr. Norris's Common Law Unfair Competition Claims.</u>

Defendants' intentional infringement and bad faith bars any reliance on parody or other "fair use" defense. *See Twin Peaks Productions, Inc. v. Publications Int'l Ltd*, 996 F.2d 1366, 1375 (2d Cir. 1993) (works that can be characterized as "commercial exploitation" are not entitled to a fair use defense).[4] Moreover, to prevail on a "fair use" defense, the "user must do nothing that would, in

---

[4] "[U]se meant to foster identification with defendant and its product is not a fair use." *Sands, Taylor & Wood Co. v Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992); *Deere & Co. v MTD Products, Inc.*, 41 F.3d 39 (2d Cir. 1994) (holding that direct competitor's parody is "unfair"); *Frito-Lay, Inc. v Bachman Co.*, 704 F. Supp. 432, 437 (S.D.N.Y. 1989) (awareness of pre-existing use of a mark can give rise to an inference of bad faith that precludes fair use); *Virtual Works, Inc v Volkswagen of Am, Inc.* 238 F.3d 264 (4th Cir. 2001) (defendant who acts even partially in bad faith in registering domain name is not, as matter of law, entitled to benefit from safe harbor (15 U.S.C. § 1125(d)(1)(B)(ii)); *EMI Catalogue Pshp. v Hill, Holliday, Connors, Cosmopulos Inc.*, 2000 U.S. App. LEXIS 30761, *20 (2d Cir. 2000).

conjunction with mark, suggest sponsorship or endorsement by trademark holder." *Playboy Enters. v. Welles,* 279 F.3d 796, 801 (9th Cir. 2002).[5]

Defendants' claim of "good faith" ignores that Defendants are exploiting Mr. Norris's fame for commercial gain without Mr. Norris's consent. Plaintiff explicitly informed Mr. Spector, as early as March 2006, that he would need Mr. Norris's consent to sell products bearing the "Chuck Norris" name or image for commercial purposes—but that Mr. Norris would not consent to Mr. Spector doing so. Defendant Ian Spector's attorney father, Neal Spector, proposed to Mr. Norris in January 2006 that he enter into a collaborative business arrangement with Defendant Ian Spector that would allow Mr. Norris "to advance the specific image he wishes to portray for himself, his products, and his charities." *See* Dkt. #26 (Spector Decl.), at Ex. 2 (Jan. 30, 3006 email), at 26 of 52. Mr. Norris refused, because Mr. Spector "fail[ed] to recognize the value in Chuck Norris' trademark and celebrity."[6] *See id.,* at 37 of 52. Defendant Spector was fully aware of the need for Mr. Norris's consent to Mr. Spector's use of Plaintiff's image and name, was fully aware that Mr. Norris was already selling "facts"-related products, and was fully aware that Mr. Norris was operating an "authorized" "facts" website at chucknorrisfacts.com. But, after his first attempt to profit from Mr. Norris's celebrity failed, Defendants intentionally did not ask Mr. Norris to consent to the Book. Further, Defendants collectively persisted in their bad faith conduct by publishing the Book with multiple references to Mr. Norris's approval of the Book. Indeed, even after Defendants received Mr. Norris's cease-and-desist letters, they printed an additional 40,000 copies of the Book with that misleading endorsement. *See* Dkt. #22, (Mulligan Decl.), at ¶ 16.

---

[5] Although a disclaimer may not be required, it would have helped obviate confusion. *See, e.g. Anheuser-Busch, Inc. v. Balducci Pubs.* 28 F.3d 769, 774 (8th Cir. 1994) (failure to provide a disclaimer showed "if not an intent to confuse, at least an indifference to the possibility that some consumers might be misled by the parody").

[6] *See* Dkt. # 26 (Spector Decl.), at Ex. 2 (March 13, 2006 email from Plaintiff's attorney), at 37 of 52:

> We believe your proposal fails to recognize the value in Chuck Norris' trademark and celebrity . . . . What Spreadshirt may have offered Ian directly is not particularly relevant because Ian could not do a deal with Spreadshirt without Chuck Norris' consent and involvement. Additionally, Chuck Norris has spent significant time and money (and will continue to do so) to stop the unauthorized sale of merchandise using his name, image and likeness."

### 4.     Mr. Norris Has Shown That He Is Likely To Succeed on His Trademark Claims.

Defendants try to explain away the clear consumer confusion, mistake, and deception that will and has arisen from the explicitly false title and domain name "Truth About Chuck Norris," and the plain language in at least 60,000 copies of the Book that misleads consumers to believe that Mr. Norris endorsed the Book. That confusion continues today: the *Associated Press*, national newspapers and news outlets and internet news sites continue to call the Book a "Biography," as is one of the world's leading book retailers. *See* Dkt. #7 *(*Kessler Decl.), at ¶ 13; *see also* ABC News, http://abcnews.go.com/Entertainment/wireStory?id=4042404 (last visited March 5, 2008) (same); Barnes & Noble Bookstore online, http://search.barnesandnoble.com/The-Truth-About-Chuck-Norris/IanSpector/e/9781592403448 #TABS (last visited March 5, 2008) (listing Book as a Biography). The Lanham Act clearly "permits celebrities to vindicate property rights in their identities against allegedly misleading commercial uses by others." *Parks v. LaFace Records*, 329 F.3d 437, 445 (6th Cir. 2003).

### 5.     Mr. Norris Has Shown He Is Likely to Succeed on His Right of Publicity Claim

Defendants claim that Plaintiff is attempting to apply both Texas and New York law to Mr. Norris's right of publicity claims. This is not correct. Texas law governs Mr. Norris's right of publicity claim. Defendants have violated Mr. Norris's publicity rights under Texas law. The only Texas case that Defendants cite concerned a fictional biography. As the Fifth Circuit states, the law gives more protection to a person's goodwill than to true historical facts: *"Unlike the goodwill associated with one's name or likeness,* the facts of an individual's life possess no intrinsic value that will deteriorate with repeated use." *Matthews v. Wozencraft*, 15 F.3d 432, 438 (5th Cir. 1994) (emphasis added).[7] Defendants cannot claim First Amendment protection for their Book or "parody" due to the confusing presentation and use of Mr. Norris's name and likeness.

---

[7] Defendants also misconstrue the Texas statute that defines the boundaries for publicity rights of *deceased* individuals. Under applicable common law, the Book is an unlawful misappropriation.

8

### C. Defendants' Affirmative Defenses Fail Because Defendants Did Not Assure Defendants That He Would Not Assert His Trademarks

Defendants rely heavily on Mr. Norris's endorsement of certain aspects of the "facts" phenomenon to claim that Mr. Norris "acquiesced" to their Book. The Second Circuit has ruled that "acquiescence constitutes a ground for denial of relief only upon a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant." *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*, 433 F.2d 686, 704 (2d Cir. 1970) (quoting cases).

Mr. Norris never assured any Defendant that he would not assert his trademark or other rights against them. In fact, the opposite is true. Mr. Spector knew as early as March 2006 that Mr. Norris vigorously enforced his trademark rights, and refused to permit third-parties, like Mr. Spector, from profiting off the Norris marks or image without Plaintiff's consent. *See* Dkt. #26 (Spector Decl.), at ¶ 10 and Ex. 2, at 37 of 52. Defendants denied Mr. Norris's request for an advance copy of the Book, so he could not have raised those claims prior to publication. *See* Dkt. #6 (Lodge Decl.), at Exs. 2-5.

Defendants ran the risk that Mr. Norris would object to the unauthorized use of his name and image with the Book and in domain names that misleadingly promise to lead users to "the Truth" about Mr. Norris. In any event, as the Second Circuit has held, "[i]t is clear that 'mere passage of time cannot constitute laches.'" *Carl Zeiss Stiftung*, 433 F.2d at 704. Only if "the passing of time can be shown to have lulled the defendant into a false sense of security, and the defendant acts in reliance thereon." *Id.* Here, there could not reasonably have been any such sense of security or reliance.

Moreover, courts in this Circuit recognize that the avoidance of consumer confusion is a paramount goal, even if a plaintiff delayed in filing suit. *See Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002). As in *Profitness*, Defendants have progressively encroached on Mr. Norris's rights by disseminating rumors of a book based on the website, followed by posting of a mock book cover on a website, followed by disclosed intent to use repugnant "facts" to sell books.

> The doctrine of progressive encroachment and the requirement that a plaintiff's delay must be unreasonable both allow the plaintiff some leeway in the timing of his suit. Although a plaintiff cannot simply sleep on his rights, he "has no obligation to sue until the likelihood of confusion looms large" and his "right to protection [has] clearly ripened." Even where laches and acquiescence would bar damages, moreover, a court may nonetheless grant injunctive relief if it determines that the likelihood of confusion is so great that it outweighs the effect of plaintiff's delay in bringing suit.

*Profitness Physical Therapy Ctr.*, 314 F.3d 62, 68 (2d Cir. 2002) (internal citation omitted). Mr. Norris never consented to the use of his name and image; he gave Defendants adequate notice, prior to publication, of his legal concerns and warned that a suit might follow. Defendants ignored those warnings and instead, at their peril, have since published five additional printings of the Book. *See* Dkt. #22 (Mulligan Decl.), ¶ 21. Preliminary injunctive relief is warranted and appropriate to avoid further violation of Plaintiff's rights.

### III. CONCLUSION

Plaintiff respectfully requests that this Court grant the Motion for Preliminary Injunction.

New York, N.Y.

March 5, 2008

Respectfully submitted,

*[signature]*

PATTON BOGGS LLP

Anthony Laura AL-3091
Deborah M. Lodge DL-8774
1675 Broadway, 31st Floor
New York, NY 10019-5820
(646) 557-5100

2550 M Street NW
Washington, D.C. 20037
(202) 457-6000

*Attorneys for Plaintiff Carlos Ray Norris a/k/a Chuck Norris*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **CARLOS RAY NORRIS,** a/k/a **CHUCK NORRIS,** an individual, | ) ) ) | Civil Action No. 07-cv-11480 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| **PENGUIN GROUP (USA), INC.,** a Delaware corporation, **IAN SPECTOR,** an individual and **QUBEFACTOR, INC.,** a New York Corporation, d/b/a **QUBEFACTOR TECHNOLOGIES,** | ) ) ) ) ) ) ) ) | CERTIFICATE OF SERVICE |
| Defendants. | ) ) | |

JOHN J. ZEFUTIE, JR. certifies as follows:

1.     I am not a party to this action, I am over eighteen years of age, and I am employed by Patton Boggs LLP, The Legal Center, One Riverfront Plaza, Newark, New Jersey 07102. Patton Boggs is counsel for Plaintiff Carlos Ray Norris ("Plaintiff") in the above-captioned action.

2.     On March 5, 2008, I served Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction by causing a true and correct copy of same to be electronically filed with the ECF Clerk of the Court and by sending a true and correct copy of same by electronic mail and by Federal Express delivery to the following counsel for Defendants at the address set forth below:

> Dean Ringel, Esq.
> Cahill Gordon & Reindel LLP
> 80 Pine Street
> New York, NY 10005

I certify under penalty of perjury that the foregoing is true and correct. Executed on March 5, 2008.

_____
John J. Zefutie, Jr.

53651